IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YSN Imports LLC dba Flame King, | ) | Case No.: 25-cv-14328 |
| Plaintiff, | ) | |
| v. | ) | Judge: |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A, | ) | Magistrate: |
| Defendants. | ) | JURY DEMAND |

## COMPLAINT

YSN Imports LLC dba Flame King ("Plaintiff") hereby files this Complaint for, *inter alia*, false advertising and unfair competition under the Lanham Act (15 U.S.C. §§ 1051 *et seq.*) and Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510 *et seq.*) on personal knowledge as to Plaintiff's own activities, and on information and belief as to the activities of others:

### THE PARTIES

1. Plaintiff is a Nevada limited liability company having a principal place of business at 2250 S. Tubeway Ave., Commerce, CA, and distributes the "FLAME KING" torch which is a stand-out, market leading product useful for removing weeds and other troublesome plants, deicing driveways or roadways, removing paint, and other tasks involving direct application of thermal energy. Plaintiff's "FLAME KING" torch (collectively, "Plaintiff's Products") is sold at major retailers such as Amazon and Home Depot. Plaintiff also markets various propane tanks and other accessories under the FLAME KING Mark.

2. Defendants identified on Schedule A, attached to this Complaint as Exhibit 1, are 35 Amazon stores that are all believed to be individuals and unincorporated business associations who, upon information and belief, reside in foreign jurisdictions. The true

        names, identities, interrelationships, and addresses of Defendants are currently unknown. Each Defendant advertises their product in interstate commerce on internet platforms where Plaintiff also retails their product. Each Defendant makes spurious and untrue claims in their advertisements, that are central to the purpose of the item and therefore material to consumer purchasing decisions, specifically with regard to the total heat output that their unit is capable of producing from an attached fuel tank.

3. Defendants disseminate their false statements through fully interactive commercial websites hosted on various e-commerce sites, such as Amazon, eBay, Wish, DHGate, and AliExpress ("Infringing Websites" or "Infringing Webstores"). Each Defendant targets consumers in the United States, including the State of Illinois, and uses false statements to induce within the United States, including the State of Illinois and the Northern District of Illinois to purchase their products based, at least in part, on their false claims of additional thermal output beyond what is physically possible. Evidence of these false claims on Defendant websites are attached as part of <u>Exhibit 1</u>. Each Defendant is clearly shown to be falsely communicating, through interstate website listings on Amazon.com, that their products are capable of heat output equal or greater than 500,000 BTUs. It is physically impossible for any of these products to achieve their claimed thermal output ratings given their shared valves, tanks, and standard equipment. Laboratory testing of similar products proves that ordinary propane tank torches, in other words all Defendant product offerings, cannot generate the claimed thermal output as measured by BTU(British Thermal Units). Lab testing is attached to the Complaint as <u>Exhibit 3</u> and proves every single one of the Defendant webstore torch claims are false based on a review of their listed products.

4. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

5. Through the operation of their Infringing Webstores, Defendants are directly and personally contributing to, inducing and engaging in the sale of Falsely Advertised Products as alleged, often times as partners, co-conspirators, and/or suppliers.

6. Upon information and belief, Defendants are an interrelated group of manufacturers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell propane torches that cannot meet the specifications to which they claim.

7. Defendants intentionally conceal their identities and the full scope of their operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal marketing operations. The identities of these Defendants are presently unknown.

8. Defendants have created the Defendant Internet Stores, operate under one or more aliases, and are advertising, offering for sale and selling to unsuspecting consumers shoddy products that are literally incapable of meeting the advertised BTU (British Thermal Unit) capacity. Defendant Internet Stores share unique identifiers, such as employing the same artificial intelligence generated image marketing schemes, establishing a logical relationship between them and suggesting that Defendants' false advertising and promotion arise out of the same transaction or occurrence, or series of transactions or occurrences.

9. Defendants are primarily Chinese, or connected to other Chinese entities and defendants by all marketing Falsely Advertised Products and/or market their products under the registered trademarks of Plaintiff. On information and belief, all Defendants source their goods from a common manufacturer or consortium of manufacturers under the direction or influence of local or national governments. The suspected joint and common supplier for their valves, based on investigation and inspection of a representative defendant product sample, is attached as Exhibit 4.

**JURISDICTION AND VENUE**

10. This is an action for false advertising unfair competition arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

11. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121l.  This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiffs' claims for unlawful and deceptive acts and practices under the laws of the State of Illinois.

12. This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District.  Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

**BACKGROUND FACTS**

14. Plaintiff is engaged in the business of manufacturing, distributing, advertising, and retailing Plaintiff's Products throughout the world, including within the Northern District of Illinois under the federally registered trademarks identified in Exhibit 2 ("FLAME KING Mark"). Defendants' sales of similar and substandard copies of Plaintiff's Products feature patently

false material statements about Defendants' Products ("Falsely Advertised Products") that are in violation of federal and state law and are irreparably damaging Plaintiff.

15. Plaintiff is the recognized market leader in the gas torch market. Plaintiff's brand, symbolized by the FLAME KING Mark, is known for its effective power and accurate claims of thermal output with proven performance to ensure it is effective for the advertised tasks, including torching weeds and other undesirable plants; removing paint; and other heat tasks. Plaintiff, and their consumers, believe that having access to 500,000 BTUs of output is necessary in order to effectively assist the user in accomplishing any repairs or weed elimination tasks.

16. The FLAME KING product line has been widely promoted, both in the United States and throughout the world. The whole of the consuming public in this market associates the flame torch market with Plaintiff, but also recognize that Plaintiff's Product sold in the United States originates exclusively with Plaintiff due to the FLAME KING Mark and the products' prodigious and accurately claimed heat output.

17. As of the date of this filing, Plaintiff's Product is sold throughout the nation with various national and local retail outlets and stores.

18. Plaintiff maintains quality control standards for all of Plaintiff's products, including those sold under the FLAME KING Mark. Genuine Asserted products are distributed through the internet from Plaintiff's own websites or their authorized Amazon.com webstore of the same name, or homedepot.com, lowes.com or other national hardware retailers.

19. The FLAME KING Mark is a highly visible and distinctive worldwide symbol of excellence in quality and uniquely associated with Plaintiff and, as a result, Plaintiff's Products bearing the FLAME KING Mark has achieved unparalleled recognition among torch buyers, resulting in substantial revenues associated with the Plaintiff's Products.

20. The FLAME KING Mark has never been assigned or licensed to any of the Defendants in this matter.

21. The FLAME KING Mark is a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned. Purchasers have come to associate FLAME KING products with the ability to accomplish a variety of tasks with torches.

22. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, marketing, and otherwise promoting the FLAME KING products.

23. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's FLAME KING Products are capable of their advertised heat output and that Defendants' products are inferior and unable to meet advertised heat specifications.

24. Recently, and for a while in the past, Plaintiff has identified the FLAME KING Mark on the Infringing Webstores and felt the impact of Falsely Advertised Products aiming to siphon off sales of genuine FLAME KING Products by making exaggerated and false claims regarding heat output to attract customer attention.

25. Defendants' Falsely Advertised Products inevitably fail to perform up to their false 500,000+ BTU advertised specifications and consumers are left with the impression all flame torches are not up to snuff when the reality is that Defendants' Falsely Advertised Products are the only ones who cannot satisfy consumers primarily due to their false claims.

26. Defendant' actions harm the reputation of Plaintiff among consumers and deny Plaintiff the ability to operate a marketplace free from malicious lies intended to sow confusion among consumers as to whether heat ratings are meaningfully impactful on their desired tasks.

27. Defendants lie about the heat output because they know consumers look at that information to evaluate and purchase torch products like the FLAME KING Products.

28. As it is a propane torch, the heat output is the primary function of the product, and therefore necessarily material in purchase decisions by consumers. Each Infringing Webstore offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Falsely Advertised Products into the United States, including Illinois.

29. On information and belief, Defendants also deceive unknowing consumers by using the FLAME KING Mark without authorization within the content, text, and/or meta tags of the listings on Infringing Webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for FLAME KING Mark Product and in consumer product searches within the Webstores.

30. Plaintiff has no adequate remedy at law to abate the customer confusion and reputational harm attributed to the lies contained within Defendants' webstore commercial listings and advertisements and requests disgorgement of all profits obtained by Defendants as a result of their false claims regarding Falsely Advertised Products.

**COUNT ONE**
**UNFAIR COMPETITION AND FALSE ADVERTISING**
**(15 U.S.C. § 1125(a))**

31. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

32. The Plaintiff's FLAME KING Mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value. The FLAME KING Mark is highly distinctive and has become universally associated in the public mind with Plaintiff's Products. Consumers associate the Plaintiff's FLAME KING Products with the Plaintiff as the source of the very highest quality products in the Plaintiff's industry and one that actually delivers 500,000 BTUs or greater of heat output.

33. Defendants all advertise their products as delivering 500,000 BTUs or greater but do not

output such heat at all. Rather, the most they can deliver is less than 400,000 BTUs or at least 20% less than advertised.

34. Defendants' use the false higher BTU claims to deceive the public into believing the Falsely Advertised Products are equal to Plaintiff's offerings or are at least capable of delivering more heat than they actually are capable of delivering, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

35. The Plaintiff has been greatly harmed by these illegal false advertising practices through diversion and loss of sales, harm to goodwill, as well as other consequential damages.

## COUNT TWO
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES
## (815 ILCS 510)

36. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

37. The Defendants all falsely claim that their Falsely Advertised Products, all offered for sale by Defendants in Illinois, are capable of generating heat at, or in excess of, 500,000 BTUs, but lab testing proves these statements are impossibly false.

38. By falsely stating the capabilities of the Falsely Advertised Products, Defendants siphon off sales from Plaintiff and otherwise sow seeds of confusion about Plaintiff and its FLAME KING Products, to the Plaintiff's great damage and injury.

39. Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1. That Defendants, their affiliates, officers, agents, employees, attorneys, confederates, and

all persons in active concert with them be permanently enjoined and restrained from:

    (i)    advertising, marketing, or otherwise communicating that their products are capable of BTU thermal output exceeding 400,000 BTUs; and

    (ii)    listing or otherwise maintaining product offerings with those false heat output claims; and

    (iii)    committing any acts calculated to cause consumers to believe that Defendants' Falsely Advertised Products are capable of heat outputs in excess of 400,000 BTUs;

    (iv)    competing unfairly with Plaintiff in any manner;

    (v)    further damaging Plaintiff's goodwill;

    (vi)    using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstores, listings, or any other means by which Defendants could continue to sell the Falsely Advertised Products; As part of compliance with this provision, we ask that Defendants or those who possess Defendants' infringing goods, segregate and destroy the falsely advertised goods.

2. That Defendants, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court.

3. Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Webstore hosts or their administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants falsely advertise products;

4. That Defendants' account(s) be disgorged and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages stemming from Defendants' false advertising be increased by a sum not exceeding

three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117;

6. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

7. Grant Plaintiff such other and further legal relief as may be just and proper.

Dated: <u>November 24, 2025</u>　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　By: 　/s/ Rishi Nair

Rishi Nair<br>
ARDC # 6305871<br>
Keener & Associates, P.C.<br>
161 N. Clark Street, Suite #1600<br>
Chicago, IL 60601<br>
(312) 375-1573<br>
rishi.nair@keenerlegal.com